(No. 45336.—

ALVIS CREEL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Lipsett Steel Co., Appellee.)

*Opinion filed June 4, 1973.—Rehearing denied Sept. 27, 1973.*

DAVIS, J., dissenting.

WARREN E. DANZ, of Peoria, for appellant.

BAYLER & NOETZEL, of Peoria (HENRY D. NOETZEL, of counsel), for appellant.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Alvis Creel, appeals from the judgment of the circuit court of Peoria County confirming the decision of the Industrial Commission which had affirmed the decision of the arbitrator dismissing petitioner's application for adjustment of claim for the reason that it was not filed within one year of the date of the accident out of which his claim arose.

The record shows that on January 14, 1964, while petitioner was employed by respondent, Lipsett Steel Company, a piece of steel fell from a crane and struck him on the head. He was rendered unconscious, and was taken to a hospital where a wound on his head was sutured, and he was released. Approximately six months later he "blacked out" and continued to have intermittent "black-

outs" until he was hospitalized on December 7, 1967. He had continued to work for respondent until October 1967, was off until July 1968, when he worked for three weeks, and has not worked since. During the period from 1964 to 1968 he had seen various physicians and at the time of the hearing was still suffering the symptoms described in his testimony.

When petitioner received a bill from the hospital where he was confined in December 1967, he took it to respondent's plant superintendent and was told that if he would "pay up" his half of the premium due under a group insurance policy which covered respondent's employees, the superintendent would attempt to have the insurance company pay the hospital bill. The premiums for the group insurance were paid one half by respondent and one half by the individual employees. The hospital bill was paid by the insurance carrier on January 30, 1968.

It is the petitioner's contention that under the provisions of section 8(j) of the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.1 *et seq.*), the time for the filing of an application of adjustment of claim was extended to one year from the date of the payment of the hospital bill and that his application was timely filed.

At all times pertinent to this case section 6(c) of the Workmen's Compensation Act provided:

> "In any case, other than one where the injury was caused by exposure to radiological materials or equipment unless application for compensation is filed with the Commission within 1 year after the date of the accident, where no compensation has been paid, or within 1 year after the date of the last payment of compensation, where any has been paid, the right to file such application shall be barred." Ill. Rev. Stat. 1967, ch. 48, par. 138.6(c).

At all pertinent times section 8(j) provided:

> "(j) 1. In the event the injured employee shall receive benefits, including medical, surgical or hospital benefits under any group plan covering non-occupational disabilities contributed to wholly or partially by the employer,

which benefits should not have been payable if any rights of recovery existed under this Act, then such amounts so paid to said employee from any such group plan as shall be consistent with, and limited to, the provisions of Paragraph 2 hereof, shall be credited to or against any compensation payment for temporary total incapacity for work or any medical, surgical or hospital benefits made or to be made under this Act. In such event, the period of time for giving notice of accidental injury and filing application for adjustment of claim shall not commence to run until the termination of such payments. This paragraph shall not apply to payments made under any group plan which would have been payable irrespective of an accidental injury under this Act. Any employer receiving such credit shall keep such employee safe and harmless from any and all claims or liabilities that may be made against him by reason of having received such payments only to the extent of such credit." Ill. Rev. Stat. 1967, ch. 48, par. 138.8(j).

The parties are in agreement that the group insurance program under which petitioner's hospital bill was paid was a benefit which "should not have been payable if any rights of recovery existed" under the Workmen's Compensation Act, and there is no question that petitioner's application for adjustment of claim was filed within one year of the date of payment of the hospital bill.

In support of his contention petitioner cites *Caterpillar Tractor Co. v. Industrial Com., 33 Ill.2d 78.* In *Caterpillar* the employee was injured on September 23, 1957, and lost no time from work until four years later, when he developed difficulties. At that time he was off work for approximately four months and "during that time received payments under a group insurance plan covering nonoccupational disabilities." (33 Ill.2d 78, 80.) He filed an application for adjustment of claim, the Industrial Commission awarded compensation, and the circuit court confirmed the decision of the Commission.

In rejecting the employer's contention that section 8(j) was not intended to revive claims which had been

barred by section 6(c) prior to the payment of benefits, the court in *Caterpillar* said: "Despite the plausibility of the company's argument we find no warrant for its position in the language of the statute. It is true that the presumed policy or purpose of the legislature may well be to restrict the operation of the provision to cases where the one-year period has not yet expired when the payments are begun. But the statute does not say so. Its language is plain that the period for filing claims 'shall not commence to run until the termination of such payments.' This all-inclusive language is similar to that in section 6, which says a claim may be made 'within 1 year after the date of the last payment of compensation, where any has been paid.' *** The legislative language is clear and unequivocal, and in such cases the intent must be ascertained from the language itself. There is no room to read into it a qualification or proviso that payments of non-occupational benefits be started within the one-year period prescribed by section 6." 33 Ill.2d 78, 81-82.

Respondent contends that this case is distinguishable from *Caterpillar* because in that case the group benefits which the employee received included weekly indemnity benefits. Assuming, *arguendo,* that the employee in *Caterpillar* did receive weekly benefits, it is clear from the statute that "benefits" included payment of hospital bills and the distinction which respondent draws does not improve its position.

Respondent points out that in 1969 (Laws of 1969, p. 546, 564) the General Assembly amended section 8(j) by adding the following provision:

"3. The extension of time for the filing of an Application . for Adjustment of Claim as provided in paragraph 1 above shall not apply to those cases where the time for such filing had expired prior to the date on which payments or benefits enumerated herein have been initiated or resumed. Provided however that this paragraph 3 shall apply only to cases wherein the payments or benefits hereinabove enumerated shall be received after the effective

date of this amendatory paragraph." (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(j).)

It argues, "The prevailing rule in Illinois is that an amendment of a statute after its judicial construction, evincing an intent to correct and override such construction is entitled to great weight. A reasonable presumption exists that the court's construction in *Caterpillar* was not in accord with the original intent of the legislature contrary to the Appellant's argument ***. (*Modern Dairy Co. v. Department of Revenue, 413 Ill. 55; People ex rel. Spitzer v. County of La Salle, 20 Ill.2d 18,* and *People ex rel. Clark v. Village of Wheeling, 24 Ill.2d 267.)* "

Upon review of the authorities cited, we find more apposite here the following language from *Western National Bank of Cicero v. Village of Kildeer, 19 Ill.2d 342, 353-354,* "The interpretation placed upon a statute by the legislative department may go far to remove doubt as to its meaning, and it is proper for us to consider the subsequent amendment to a statute in determining the intent and meaning of the statute prior to amendment. [Citations.] The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence." We note further that in the amendment enacted in 1969, the General Assembly left unchanged the language "*** benefits including *** hospital benefits."

We conclude that petitioner's application for adjustment of claim, having been filed within one year of the payment of hospital benefits was timely filed, and accordingly the judgment of the circuit court of Peoria County is reversed, and the cause is remanded with directions to set aside the decision of the Industrial Commission and for further proceedings consistent with this opinion.

*Reversed and remanded, with directions.*

MR. JUSTICE DAVIS, dissenting:

The crux of the majority opinion is that when the General Assembly amended section 8(j) by the addition of

paragraph 3 in 1969, it was admitting the correctness of this court's decision in *Caterpillar Tractor Co. v. Industrial Com. (1965), 33 Ill.2d 78,* on the theory that "The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence." However, when the statute is viewed in its entirety, I believe that the proper interpretation of legislative intent in enacting section 8(j)3 to be that this court had, in the view of the legislature, wrongfully construed section 8(j) in *Caterpillar.*

The majority has considered only two sections of the Act, sections 6(c)(3) and 8(j)1, 2. Those portions of the Act read as follows:

"6(c)(3) \*\*\*

In any case, other than one where the injury was caused by exposure to radiological materials or equipment unless application for compensation is filed with the Commission within 1 year after the date of the accident, where no compensation has been paid, or within 1 year after the date of the last payment of compensation, where any has been paid, the right to file such application shall be barred." Ill. Rev. Stat. 1967, ch. 48, par. 138.6.

8(j)1. In the event the injured employee shall receive benefits, including medical, surgical or hospital benefits under any group plan covering non-occupational disabilities contributed to wholly or partially by the employer, which benefits should not have been payable if any rights of recovery existed under this Act, then such amounts so paid to said employee from any such group plan as shall be consistent with, and limited to, the provisions of Paragraph 2 hereof, shall be credited to or against any compensation payment for temporary total incapacity for work or any medical, surgical or hospital benefits made or to be made under this Act. In such event, the period of time for giving notice of accidental injury and filing application for adjustment of claim shall not commence to run until the termination of such payments. This paragraph shall not apply to payments made under any group plan which would have been payable irrespective of an accidental injury under this Act. Any employer receiving such credit shall keep such

employee safe and harmless from any and all claims or liabilities that may be made against him by reason of having received such payments only to the extent of such credit.

2. Nothing contained in this Act shall be construed to give the employer or the insurance carrier the right to credit for any benefits or payments received by the employee other than compensation payments provided by this Act, and where the employee receives payments other than compensation payments, whether as full or partial salary, group insurance benefits, bonuses, annuities or any other payments, the employer or insurance carrier shall receive credit for each such payment only to the extent of the compensation that would have been payable during the period covered by such payment." Ill. Rev. Stat. 1967, ch. 48, par. 138.8(j).

Section 8(j)3, which is the section relied upon by the appellee to show that the intent of the legislature is contrary to *Caterpillar* reads:

"3. The extension of time for the filing of an Application for Adjustment of Claim as provided in paragraph 1 above shall not apply to those cases where the time for such filing had expired prior to the date on which payments or benefits enumerated herein have been initiated or resumed. Provided however that this paragraph 3 shall apply only to cases wherein the payments or benefits hereinabove enumerated shall be received after the effective date of this amendatory paragraph." Ill. Rev. Stat. 1969, ch. 48, par. 138.8(j).

The search for legislative intent in this case should also include the introductory sentence of section 6(c), and the language of section 8(a), neither of which was considered by the majority.

The introductory sentence of section 6(c) must be considered in the analysis of any of the subsequent paragraphs of that section. It reads:

"No proceedings for compensation under this Act shall be maintained unless notice of the accident has been given to the employer as soon as practicable, but not later than 45 days after the accident." Ill. Rev. Stat. 1967, ch. 48, par. 138.6.

Section 8(a) sets forth the medical services which shall be paid by the employer, and specifically states that the gratuitous payment of such bills shall not toll the running of the statute of limitations. It reads:

"(a) The employer shall provide the necessary first aid medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury.

The employee may elect to secure his own physician, surgeon and hospital services at his own expense.

When an employer and employee so agree in writing, nothing in this Act shall be construed to prevent an employee whose injury or disability has been established in accordance with the provisions of this Act, from relying in good faith, on treatment by prayer or spiritual means alone, in accordance with the tenets and practice of a recognized church or religious denomination, by a duly accredited practitioner thereof, and having nursing services appropriate therewith, without suffering loss or diminution of the compensation benefits under this Act; provided, the employee shall submit to all physical examinations required by this Act. The cost of such treatment and nursing care shall be paid by the employee; unless, the employer agrees to make such payment.

Where the accidental injury results in the amputation of an arm, hand, leg or foot, or the enucleation of an eye, or the loss of any of the natural teeth, the employer shall furnish an artificial of any such members lost or damaged in accidental injury arising out of and in the course of employment, and shall also furnish the necessary braces in all proper and necessary cases. The employer shall, when necessary, refit or replace artificial limbs during a period of 30 months following the first application of any artificial limb. Where the accidental injury accompanied by physical injury results in damage to a denture or where the accidental injury results in damage to an artificial member, the employer shall replace or repair such denture or artificial member.

*The furnishing by the employer of any such services or appliances shall not be construed to admit liability on the part of the employer to pay compensation.*

> *The furnishing of any such services or appliances by the employer shall not be construed as the payment of compensation."* (Emphasis added.) Ill. Rev. Stat. 1967, ch. 48, par. 138.8(a).

The clear intent of these sections is to (1) provide timely notice of the accident to the employer so that he may investigate into the compensability of the injury, (2) encourage employers to provide prompt medical care without the necessity of confessing liability for temporary or permanent losses caused by the accident, and (3) provide the employer with protection against stale claims by requiring that an application for adjustment of claim be filed within one year of the accident or last payment of "compensation."

The reason for the notice provision of the Act has been set forth by this court in *United States Steel Corp. v. Industrial Com. (1964), 32 Ill.2d 68,* where we said at page 75:

"It is generally recognized that the purpose of such a notice provision is both to protect the employer against fraudulent claims by giving him an opportunity to investigate promptly and ascertain the facts of the alleged accident and to allow him to minimize his liability by affording the injured employee immediate medical treatment. *Republic Steel Corp. v. Industrial Com. 26 Ill.2d 32, 41;* Larson, Workmen's Compensation, par. 78.32."

We have held the notice requirement to be jurisdictional and a prerequisite to a right to maintain proceedings under the Act. *Ristow v. Industrial Com. (1968), 39 Ill.2d 410.*

The 1-year-limitation provision had been construed by this court prior to our holding in *Caterpillar* to be jurisdictional and a condition precedent to a right to maintain a proceeding under the Act. *Black v. Industrial Com. (1946), 393 Ill. 187.*

It is clear, then, that the construction of section 8(j) used by this court in *Caterpillar* impliedly made inoperative several provisions of the Act which had previously been held to be jurisdictional, for that decision had the effect that (1) the employer need never be informed of the occurrence of the accident before the employee files with the Industrial Commission, and (2) the employer is liable forever. These results occur whenever an employer funds in any part a nonoccupational health insurance fund for his employees. The employee in such a case could wait for any length of time before filing his claim with the Industrial Commission, and revive his claim merely by telling the employer that the bill he is submitting for payment is not work related and then "changing his mind" as soon as that bill has been paid by the insurance carrier.

When viewed from this perspective, it appears that the holding of this court in *Caterpillar* was not in accord with the original intent of the legislature, for it would mean the legislature intended that the Industrial Commission may lose jurisdiction completely, due to the failure of a party to proceed, and then regain jurisdiction by the unilateral act of the very party who allowed the original jurisdiction of the Commission to be lost.

Upon consideration of the entire scope of the Act as described above, I believe that the addition of paragraph 3 to section 8(j) evinced an intent of the legislature to correct a construction of the section by this court which the legislature regarded as erroneous.

The holding of the Industrial Commission should be affirmed.