The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Billy HALE, Defendant-Appellant.

No. 81SA297.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1982.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colo. State Public Defender, Margaret L. O'Leary, Deputy State Public Defender, Denver, for defendant-appellant.

ROVIRA, Justice.

This is an appeal from a conviction on two counts of aggravated motor vehicle theft and one of habitual criminal. We reverse in part, affirm in part, and remand for resentencing.

On May 14, 1979, the defendant was charged in a six-count information in the El Paso district court. Counts 1 and 2 charged the defendant with two separate aggravated motor vehicle thefts [1]—the theft of a 1978 Pontiac Trans Am on March 12, 1979, and the theft of a 1979 Mercedes Benz 280 on February 2, 1979. Counts 3, 4, and 5 charged the prior convictions of various auto-theft-related crimes for purposes of the enhancement provision of section 18-4-409(3)(b), C.R.S.1973 (1978 Repl.Vol. 8). Count 6 charged two prior convictions for purposes of the habitual criminal statute.[2]

Over the People's objection, the trial court granted the defendant's motion to sever counts 1 and 2. Trial on count 1 was begun on July 23, 1979, and on July 24, the jury found the defendant guilty. Later the same day, the jury found that the defendant had been convicted of two prior felonies for purposes of the habitual criminal charge. On July 25, trial began before a different jury on count 2. The next day the jury returned a guilty verdict, after which counts 3, 4, and 5 were dismissed along with the habitual criminal charge. Defendant's motions for judgment of acquittal notwithstanding the verdict as to the habitual criminal conviction, and for new trials as to counts 1 and 2, were denied.

1. Charges were brought under section 18-4-409(2), C.R.S.1973 (1978 Repl.Vol. 8).

2. Section 16-13-101(1), C.R.S.1973 (1978 Repl. Vol. 8).

On September 28, defendant was sentenced to 25 to 30 years' imprisonment on two counts of aggravated motor vehicle theft and the habitual criminal charge.

The defendant now appeals, arguing that the trial court erred in its instruction to the jury, with respect to count 1, on what constitutes altering or disguising the vehicle under the aggravated motor vehicle theft statute. The defendant also argues that the trial court erred in denying his motion to suppress certain testimony, that the habitual criminal statute impermissibly burdened his right to testify in his own behalf at trial on count 1, and that the habitual criminal conviction was improper for a number of reasons.[3]

## I.

The evidence taken in connection with count 1 indicates that sometime on the afternoon of March 12, 1979, the defendant removed a 1978 Pontiac Trans Am from the used car lot of Daniels Chevrolet in Colorado Springs. Because there were no license plates on the car, the defendant removed a dealer tag belonging to another automobile dealer from an adjacent vehicle on the lot and placed it on the Pontiac. The tag was attached by magnets. A few days later, the car was found abandoned in Boulder.

▪ The defendant's first argument on appeal is that the trial court erred in instructing the jury that "[p]utting unconnected license plates on a car is one form of altering or disguising the appearance of that automobile." We agree.

Section 18–4–409(2)(b), C.R.S.1973 (1978 Repl.Vol. 8), provides that a person commits aggravated motor vehicle theft if he knowingly exercises unauthorized control over a motor vehicle and alters or disguises its appearance. The question before us is whether the defendant's placing an unrelated dealer tag on the stolen vehicle constituted an alteration or disguise of the automobile's appearance.[4]

As a threshold matter, we note that not every act that alters the appearance of a vehicle is an aggravating factor falling within the purview of the statute. An extreme example is that washing and waxing an automobile does, and is intended to, alter its appearance. A literal interpretation would produce an absurd result clearly not contemplated by the legislature. See section 2–4–201(1)(c), C.R.S.1973 (1980 Repl. Vol. 1B). Consequently we must attempt to discern the legislative intent. *People v. Silvola,* 190 Colo. 363, 547 P.2d 1283, *cert. denied sub nom. Silvola v. Colorado,* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976).

An elementary canon of statutory construction is that in order to ascertain the intent of the legislature the statute in question must be read as a whole. *R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980); *People ex rel. Dunbar v. Trinidad State Junior College,* 184 Colo. 305, 520 P.2d 736 (1974). Moreover, criminal statutes are to be strictly construed in favor of a defendant. *Van Gerpen v. Peterson,* Colo., 620 P.2d 714 (1980); *People v. Roybal,* Colo., 618 P.2d 1121 (1980); *Bailey v. People,* 200 Colo. 549, 617 P.2d 549 (1980).

Section 18–4–409(2), as it existed at the time of the offenses charged, specified five ways that aggravated motor vehicle theft might be committed. The statute read as follows:

"(2) A person commits aggravated motor vehicle theft if he knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception and:

(a) Retains possession or control of the motor vehicle for more than seventy-two hours; or

---

3. Although the defendant appealed both convictions of aggravated motor vehicle theft, all of his arguments for reversal relate to count 1 and the habitual criminal charge.

4. Section 18–4–409(2) has since been amended to include as an aggravating factor the unlawful attachment or display of license plates other than those officially issued for the vehicle. Section 18–4–409(2)(h), C.R.S.1973 (1982 Supp.).

(b) Attempts to alter or disguise or alters or disguises the appearance of the motor vehicle; or

(c) Attempts to alter or remove or alters or removes the vehicle identification number; or

(d) Uses the motor vehicle in the commission of a crime other than a traffic offense; or

(e) Causes five hundred dollars or more property damage in the exercise of control of the motor vehicle."

With the exception of paragraph (d), all of the aggravating circumstances seem to involve factors which seriously diminish the automobile owner's likelihood of either regaining possession of the vehicle or regaining it in the same condition as prior to the theft. In either event, the automobile owner's property interest is impaired to an extent greater than if he were merely deprived of his vehicle for one or two days and then recovered it substantially undamaged. Paragraph (d) adds an additional element of moral culpability. It is not clear that placing a dealer tag on a car having no license plate would make the likelihood that the owner would never recover his vehicle significantly greater than if the vehicle had tags on it when it was stolen.

It is fairly debatable whether placing an unrelated dealer tag on the vehicle was the type of activity that the legislature intended would increase the level of crime from a class 2 misdemeanor to a class 4 felony.[5] It is likely that the legislature was addressing the problem of such alterations as repainting the car a different color. Paragraphs (b) and (c) could very well have been aimed at professional car-theft rings that disguise stolen cars for resale. Moreover, if changing license plates on a vehicle constitutes an alteration or disguise of its appearance, it would seem to follow that changing the vehicle identification number is such a change as well. If that were true, paragraph (c) would be a redundancy. We conclude that a strict construction of the statute in favor of the defendant mandates a

conclusion that his actions did not amount to aggravated motor vehicle theft.

Our conclusion is reinforced by the fact that the legislature has since amended the statute by adding three additional aggravating factors including "unlawfully attach[ing] or otherwise display[ing] in or upon the motor vehicle license plates other than those officially issued for the motor vehicle." Colo.Sess.Laws 1979, ch. 168, 18–4–409(2)(h) at 727. This addition is not a subparagraph of section 409(2)(b), but is an independent ground of aggravation.

■ There is a presumption that when a statute is amended there is an intent to change the law. *Ridge Erection Co. v. Mountain States Telephone & Telegraph Co.,* 37 Colo.App. 477, 549 P.2d 408 (1976); *Creel v. Industrial Commission,* 54 Ill.2d 580, 301 N.E.2d 275 (1973); *Futura Corp. v. State Tax Commission,* 92 Idaho 288, 442 P.2d 174 (1968). *See also* Sands, *Sutherland on Statutes and Statutory Construction* section 22.30 (4th ed.1972). This presumption has somewhat less force, however, when arguably more specific sections are added to a general section. In such a case, the legislature may merely be attempting to clarify the meaning of the statute. Surrounding circumstances must then be examined to discern the legislative intent. *See Sutherland, supra,* section 22.30.

We do not believe that in this instance the legislature was merely clarifying the existing statute. Three new paragraphs were added to section 18–4–409(2) in 1979. One now commits aggravated motor vehicle theft if he unlawfully takes a vehicle and:

"(f) Causes bodily injury to another person while he is in the exercise of control of the motor vehicle; or

(g) Removes the motor vehicle from this state for a period of time in excess of forty-eight hours; or

(h) Unlawfully attaches or otherwise displays in or upon the motor vehicle

---

**5.** Under section 18–4–409(4), C.R.S.1973 (1978 Repl.Vol. 8), if none of the aggravating factors are present, the unauthorized use of a motor vehicle is a class 2 misdemeanor.

license plates other than those officially issued for the vehicle."[6]

Paragraphs (f) and (g) are clearly changes in the law, lending support to our conclusion that paragraph (h) was intended to change the law as well.

We therefore conclude that the trial court erred in its instruction to the jury that, under the law as it existed at the time of the offense, placing unrelated license plates on a car constituted altering or disguising the appearance of the vehicle. Because of our resolution of this issue, we need not address the remaining issues.

The judgment as to count 1 and the habitual criminal charge is reversed. The judgment as to count 2 is affirmed, and the cause is remanded to the district court for resentencing.

ERICKSON, J., dissents.

ERICKSON, Justice, dissenting:

I disagree with a statutory construction which excludes the placement of false license plates on a stolen vehicle from the statutory proscription of section 18–4–409(2)(b), C.R.S.1973 (1978 Repl.Vol. 8), and I therefore would affirm the defendant's conviction for aggravated motor vehicle theft.

On March 12, 1979, the date of the offense charged in court, section 18–4–409(2)(b) provided in pertinent part:

"(2) A person commits aggravated motor vehicle theft if he knowingly obtains or exercises control over the motor vehicle of another without authorization . . . and:

(b) Attempts to alter or disguise or alters or disguises the appearance of the motor vehicle."

Admittedly, an ambiguous criminal statute or one susceptible of competing interpretations should be construed strictly in favor of the accused. E.g., People v. Home Insurance Co., 197 Colo. 260, 591 P.2d 1036 (1979); People v. Cornelison, 192 Colo. 337,

559 P.2d 1102 (1977). This rule of lenity, however, must not be employed in a manner that confines "the operation of the statute within limits narrower than those intended by the legislature, or destroys the intention of the law-making body." Scheely v. People, 54 Colo. 136, 129 P. 201 (1912). The primary purpose of the rule of strict construction is to achieve a fair and reasonable result consistent with legislative intent. Van Gerpen v. Petersen, Colo., 620 P.2d 714 (1980).

In my view, the majority's construction of section 18–4–409(2)(b) proceeds from a strained interpretation of words which are clear and unambiguous on their face. To alter the appearance of a motor vehicle is to cause it to become different in its external appearance without changing it into something else. See Webster's Third New International Dictionary (1961) at 63. To disguise the appearance of a motor vehicle is to furnish it with a false identity or obscure the existence of its true identity. I know of no more effective way to alter or disguise the appearance of a motor vehicle than to change the vehicle's license plate. The license plate is the most commonly used and readily available means of identification for a motor vehicle. In today's world it serves the same function for identifying motor vehicles as a social security number serves to identify people. With the license plate one can obtain access to important information regarding the characteristics of both the owner of the vehicle and the vehicle itself, such as the owner's name, his address, the registration number of the vehicle, and its make and model.

I view this 1979 statutory addition of subsection 18–4–409(2)(h), which expressly includes the unlawful attachment of an unrelated license plate to a motor vehicle as an aggravating factor, as nothing more than a legislative attempt to spell out in specific terms what was previously included within the general prohibition of section 18–4–402(2)(b). As such, the 1979 amend-

---

**6.** Paragraph (f) was added April 25, 1979. Colo.Sess.Laws 1979, ch. 172, 18–4–409(2)(f) at 736. Paragraphs (g) and (h) were added June 22, 1979. Colo.Sess.Laws 1979, ch. 168, 18–4–409(2)(g), (h) at 727.

ment does not establish that, when the legislature enacted section 18–4–409(2)(b) in 1977, it intended to exclude the display of a false license plate from the disguising or altering prohibitions of subsection 18–4–409(2)(b).

The act of placing false license plates on a stolen motor vehicle causes the vehicle to assume an identity different from that which it actually has and, in my opinion, falls squarely within the express terms of the statutory proscription against altering or disguising the appearance of a motor vehicle in subsection 18–4–409(2)(b). I believe that the trial court correctly instructed the jury on this aspect of the case.