The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Alonzo TERRY, Defendant–Appellee.

No. 88SA259.

Supreme Court of Colorado,
En Banc.

May 14, 1990.

James F. Smith, Adams County Dist. Atty., and Michael J. Milne and Peter A. Stumpf, Deputy Dist. Attys., Brighton, for plaintiff-appellant.

Craig L. Truman, P.C., Craig L. Truman, Denver, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The People appeal[1] the Adams County District Court's sentence of the defendant Alonzo Terry to a term of probation follow-

---

1. The People's appeal was filed prior to August 1, 1988. *See* § 16–12–102(1), 8A C.R.S. (1986); C.A.R. 4(b)(2), 7B C.R.S. (1984) (amended 1988).

ing his conviction of second degree assault by the use of a deadly weapon. The district court ruled that the defendant was not subject to section 16–11–309, 8A C.R.S. (1986), requiring mandatory sentencing for violent crimes, because the court had dismissed the People's mandatory sentencing count prior to the sentencing hearing. We reverse and remand for resentencing.

## I.

On November 2, 1987, the defendant drove to the home of Stephen Meyer. During a quarrel, the defendant threw a bucket of gasoline on Meyer and threatened to light the gasoline. When Meyer fled, the defendant fired a gun two times at him.

The defendant was charged with attempted first degree murder, §§ 18–2–101(1) and 18–3–102(1)(a), 8B C.R.S. (1986), second degree assault, § 18–3–203(1)(b), 8B C.R.S. (1986), and commission of a violent crime, § 16–11–309, 8A C.R.S. (1986). Following a bench trial, the district court judge found the defendant not guilty of attempted first degree murder and guilty of second degree assault with the use of a deadly weapon. After finding the defendant guilty of second degree assault with the use of a deadly weapon, the court granted the prosecutor's motion to dismiss the violent crimes count.

At the sentencing hearing the prosecutor argued that section 18–3–203, upon which the defendant was convicted, required that the district court impose a violent crimes sentence on the defendant pursuant to section 16–11–309, even though the court granted the prosecutor's motion to dismiss the violent crimes count. The court ruled that the defendant was not subject to section 16–11–309 after the dismissal of the violent crimes count, and sentenced him to eight years of probation with a condition of probation that he serve sixty days in the county jail.

## II.

The issue before the court is whether section 18–3–203 required that the trial court impose a sentence as provided in section 16–11–309 even though the section 16–11–309 count was dismissed prior to sentencing. We conclude that the court was required to impose sentence under section 16–11–309.

Subsection 18–3–203(1)(b) provides that a person commits second degree assault if "[w]ith intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon." Subsection 18–3–203(2)(c) provides that if a person is convicted of second degree assault by the use of a deadly weapon, "the court shall sentence the defendant in accordance with the provisions of section 16–11–309."

Section 16–11–309 provides in relevant part:

(1)(a) [A]ny person convicted of a crime of violence shall be sentenced ... to a term of incarceration greater than the maximum in the presumptive range,[2] but not more than twice the maximum term ... without suspension.

. . . .

(2)(a)(I) "Crime of violence" means a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of ... a crime of murder, first or second degree assault, kidnapping, sexual assault, robbery, first degree arson, first or second degree burglary, escape, or criminal extortion....

. . . .

(4) In any case in which the accused is charged with a crime of violence as defined in subsection (2)(a)(I) of this section, the indictment or information shall so allege in a separate count, even though the use or threatened use of such deadly weapon or infliction of such serious bodily injury or death is not an essential element of the crime charged.

Subsection 16–11–309(5) provides in relevant part that, in a trial to the court, the court:

---

**2.** Section 18–1–105, 8B C.R.S. (Supp.1989), provides for a range of "presumptive penalties" that

may be imposed on persons convicted of felonies.

shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime.... If the ... court finds that the accused used, or possessed and threatened the use of, such deadly weapon or that such injury or death was caused by the accused, the penalty provisions of this section shall be applicable.

## A.

 The principles guiding judicial interpretation of statutes are well settled. Interpretation of statutes is a question of law, and appellate courts need not defer to the trial court's interpretation. *See Silverstein v. Sisters of Charity of Leavenworth Health Servs. Corp.*, 43 Colo.App. 446, 449, 614 P.2d 891, 893 (1979), *cert. denied* (1980). The first goal of a court in construing a statute is to ascertain and give effect to the intent of the General Assembly. *People v. District Court, Second Judicial Dist.*, 713 P.2d 918, 921 (Colo.1986). Constructions that defeat the obvious legislative intent should be avoided. *Id.* To determine the legislative intent, courts look first to the statutory language. *Id.*

 If the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply other rules of statutory construction and look to pertinent legislative history to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation. *See Griffin v. S.W. Devanney & Co.*, 775 P.2d 555, 559 (Colo.1989); *see also* § 2-4-203(1)(c), 1B C.R.S. (1980) (authorizing courts construing ambiguous statute to consider factors including legislative objective of statute, circumstances under which statute was enacted, legislative history, former statutory provisions, law concerning same or similar subjects, and consequences of a particular construction). Courts should attempt to give effect to all parts of a statute, and constructions that would render meaningless a part of the statute should be avoided. *See District Court*, 713 P.2d at 921.

## B.

 The parties' dispute focuses on the mandatory language of subsection 18-3-203(2)(c) and subsections 16-11-309(4) and (5). The defendant argues, and the trial court concluded, that subsections 16-11-309(4) and (5) require that the prosecutor plead and prove that the defendant committed a violent crime and was thus subject to section 16-11-309's sentencing provisions. The People assert that subsection 18-3-203(2)(c) required that the trial court sentence the defendant under subsection 16-11-309(1).

 Because they concern the same subject matter—sentencing—subsections 16-11-309(4) and (5) and subsection 18-3-203(2)(c) must be construed together and harmonized to effectuate the legislature's intent. *See People v. Low*, 732 P.2d 622, 629 n. 10 (Colo.1987). In attempting to construe the subsections together, we conclude that, in operation, the language in the subsections is ambiguous—that is, it is susceptible to reasonable, alternative interpretations. *See Griffin*, 775 P.2d at 559.

Subsection 18-3-203(2)(c) may be interpreted to require mandatory sentencing as provided for in section 16-11-309, leaving no room for a trial court to impose a sentence under the typical sentencing scheme provided for in section 18-1-105, 8B C.R.S. (Supp.1989). On the other hand, subsections (4) and (5) of section 16-11-309 may be interpreted to require that a prosecutor charge, maintain, and prevail on, a mandatory crimes count in order for a court to impose a mandatory sentence under subsection 16-11-309(1), even if subsection 18-3-203(2)(c) specifically requires mandatory sentencing.

Because the subsections in operation are ambiguous we find it necessary to look beyond the statutory language and resort to other rules of statutory construction, including review of legislative history. Application of those rules demonstrates that the legislature intended that subsection 18-3-203(2)(c) require the imposition of a mandatory crimes sentence as provided for in subsection 16-11-309(1).

At the outset we note that the trial court's construction of subsections 16–11–309(4) and (5) and subsection 18–3–203(2)(c) renders subsection 18–3–203(2)(c) meaningless. The court in effect concluded that subsections 16–11–309(4) and (5) exclusively govern whether subsection 18–3–203(2)(c)'s sentencing mandate can be carried out. Under such an interpretation, however, subsection 18–3–203(2)(c) has no effect because it provides no sentencing authority to a trial court other than that which subsections 16–11–309(4) and (5) impart. We cannot countenance such a construction, which would render subsection 18–3–203(2)(c) meaningless. *See District Court*, 713 P.2d at 921.

Moreover, we must assume that the legislature, by amending subsection 18–3–203(2)(c), intended to change the law concerning sentencing for second degree assault by the use of a deadly weapon. *People v. Hale*, 654 P.2d 849, 851 (Colo.1982). The trial court's construction of subsection 18–3–203(2)(c), however, fails to reflect any change in the sentencing provisions of section 18–3–203.

▪ Subsection 18–3–203(2)(c)'s legislative history also demonstrates that the trial court erroneously interpreted subsection 18–3–203(2)(c) and subsections 16–11–309(4) and (5). In 1986 the legislature enacted an omnibus bill amending nine criminal statutes, including section 18–3–203.[3] 1986 Colo.Sess.Laws 776–78. The legislature amended the nine statutes to read that a defendant convicted under any of the statutes "shall be sentenced by the court in accordance with the provisions of section 16–11–309." *Id.* Importantly, each of the statutes contains elements of bodily injury or use of a deadly weapon, the same elements necessary to impose a sentence un-

der section 16–11–309. *See* §§ 16–11–309(1)(a) and 16–11–309(2)(a)(I). Furthermore, because the nine statutes prior to enactment of the omnibus bill made no reference to section 16–11–309 and contained no specific sentencing provisions, it is reasonable to infer that the legislature enacted the bill to change the law regarding sentencing for violations of those statutes—specifically, to mandate a more severe sentence as provided for in section 16–11–309.[4] *See Hale*, 654 P.2d at 851–52.

Other legislative history supports the conclusion that by enacting subsection 18–3–203(2)(c) the legislature intended to impose the more severe sentences provided for in section 16–11–309 for defendants convicted of second degree assault by the use of a deadly weapon. During the House Judiciary Committee's discussion of the omnibus bill, Representative Mielke, a sponsor of the bill, stated that he was introducing the bill in response to the court of appeals decision in *People v. Montoya*, 709 P.2d 58 (Colo.App.1985), *rev'd*, 736 P.2d 1208 (Colo.1987). *Hearing on H.R. 1008 Before the House Judiciary Committee* [hereinafter "Hearings on H.R. 1008"], 55th Gen. Assembly, 2d Reg.Sess. (Audio Tape 86–15, Jan. 14, 1986).

In *Montoya*, the defendant was convicted of first degree assault for shooting another with a gun, contrary to subsection 18–3–202(1)(a), 8B C.R.S. (1978) (now at 8B C.R.S. (1986)). The prosecution apparently did not allege or prove that Montoya committed any acts other than those necessary for the offense of first degree assault, which requires the use of a deadly weapon. The court of appeals held that, for the prosecution to obtain mandatory sentencing under section 16–11–309, the prosecution was required to prove the elements of section 16–11–309, and that the prosecution

**3.** The bill also amended § 18–3–103 (second degree murder), § 18–3–202 (first degree assault), § 18–3–209 (assault against the elderly or handicapped), § 18–3–302 (second degree kidnapping), § 18–3–404 (third degree sexual assault), § 18–3–405 (sexual assault against a child), § 18–4–102 (first degree arson), and § 18–4–302 (aggravated robbery). 1986 Colo.Sess.Laws 776–78.

**4.** The rule of lenity in general requires that ambiguous criminal statutes, for which express legislative intent cannot be found, be strictly construed in favor of the accused. *District Court*, 713 P.2d at 922. However, courts may not apply the rule of lenity to defeat the evident intention of the legislature. *Id.* (citing *Olinyk v. People,* 642 P.2d 490, 494 (Colo.1982); *Croswell v. People*, 74 Colo. 547, 549–50, 223 P. 51, 52 (1924)).

could not use the same proof it had used to convict Montoya of first degree assault.

After explaining the court of appeals holding in *Montoya,* Representative Mielke stated in relevant part:

[W]hat we're doing here is hopefully re-writing our statute to conform to the *Montoya* decision. [T]o anticipate our supreme court upholding the *Montoya* decision, we felt, and the [Interim Committee on Sentencing and Criminal Justice] felt this summer, that we needed to rewrite the crimes of violence statute specifically setting forth and allowing the enhanced penalties in that area.... The scary thing in this is that it deals with the elderly and handicapped and other areas we deal with the crimes of violence. [T]here's a potential that the defendant that uses force, threat or intimidation in unlawful sexual offenses against children, we may lose those on appeal.

Hearing on H.R. 1008. Furthermore, in response to Representative Barry's question of how House Bill 1008 addressed the equal protection concerns of the court of appeals in *Montoya,* a district attorney testifying at the hearing stated in relevant part:

The [*Montoya*] decision says that ... under the mandatory sentencing provision you're finding, for instance in this case, that a deadly weapon was used. That is not a finding that is in addition to any other finding that had to be made under the original charge, and they say that's a denial of equal protection. So, what you're doing with this bill is saying, all right, we're just going to make the penalty for this class of crime the same as if it would ... have been a penalty under 16–11–309. *There's no additional finding required because you're just essentially changing the penalty for the*

*crime.* You have, you have that power to set the penalty for the crime.

Hearing on H.R. 1008 (testimony of S. Peek) (emphasis supplied).

The House Judiciary Committee shortly afterward voted 8–1 to refer the bill favorably to the Rules Committee.

### III.

The legislative history reveals that the purpose of House Bill 1008 was to mandate sentencing under section 16–11–309 irrespective of any allegation of a violent crime and irrespective of a specific finding by the trial court that a violent crime has been committed. That is, the legislature in enacting the bill intended—for purposes of punishing violations of any of the nine listed offenses—to treat section 16–11–309 not as a sentence-enhancing statute but as a presumptive penalty statute.[5] *Cf.* § 18–1–105, 8B C.R.S. (Supp.1989) (providing generally for presumptive penalties for felony offenses). The bill "does no more than set a penalty range for particular crimes involving use of a deadly weapon." *People v. Haymaker,* 716 P.2d 110, 118 (Colo.1986), *disapproving People v. Montoya,* 709 P.2d 58 (Colo.App.1985); *see People v. Eggers,* 196 Colo. 349, 352, 585 P.2d 284, 286 (1978) (section 16–11–309 does not enhance punishment but mandates minimum sentencing) (considering section 16–11–309 before it was amended to preclude sentencing within presumptive range); *cf. In the Interest of C.R.B.,* 662 P.2d 198, 199 (Colo. App.1983) ("mandatory sentence statutes do not enhance the disposition but merely require the court to impose a specific disposition on the offender") (construing delinquency sentencing statute).

The legislature certainly has the authority to establish more severe penalties for acts that it believes have graver consequences. *People v. Thatcher,* 638 P.2d

---

**5.** This construction carries out the legislature's intentions and gives full effect to § 18–3–203(2)(c) and §§ 16–11–309(4) and (5) in accordance with our rules of statutory construction. *See People v. District Court, Second Judicial Dist.,* 713 P.2d 918, 921 (Colo.1986). Subsection 18–3–203(2)(c)'s sentencing mandate is effectuated by requiring a sentence under the

violent crimes statute. In addition, §§ 16–11–309(4) and (5) are unaffected and may continue to require that a prosecutor plead and prove a violent crimes count against a defendant whenever the substantive criminal statute does not specifically require sentencing under the violent crimes statute.

760, 766 (Colo.1982); *see also Haymaker,* 716 P.2d at 118 (legislature rationally could perceive that use of deadly weapon during sexual assault is more reprehensible and dangerous than commission of sexual assault without use of deadly weapon). The defendant's use of a gun plainly transformed his conduct into a violent crime, punishable by a violent crimes sentence pursuant to subsection 18–3–203(2)(c). Subsection 18–3–203(2)(c)'s use of "shall" signifies the legislature's directive that courts must impose a violent crimes sentence pursuant to section 16–11–309. *See People v. Guenther,* 740 P.2d 971, 975 (Colo.1987) (word "shall" in a statute involves "mandatory connotation" and is the antithesis of discretion or choice). Thus, the trial court was obligated to sentence the defendant under section 16–11–309.

We remand the case to the district court for resentencing pursuant to section 16–11–309.

Justice KIRSHBAUM dissents, and Chief Justice QUINN and Justice MULLARKEY join in the dissent.

Justice KIRSHBAUM dissenting.

The majority holds that section 18–3–203(2)(c), 8B C.R.S. (1986), requires trial courts to impose an enhanced sentence of incarceration under section 16–11–309, 8A C.R.S. (1986 and 1989 Supp.), whenever a first-time offender is convicted of second degree assault as defined in section 18–3–203(1)(b), 8B C.R.S. (1986). This conclusion contravenes legislative intent clearly expressed in relevant statutory language, departs from the rationale underlying prior decisions of this court and the Court of Appeals, overlooks pertinent legislative history and ignores certain fundamental principles of statutory construction. I therefore respectfully dissent.

The facts of this case are uncontroverted. The People initially charged Terry in a separate count of an information containing other substantive offenses with a crime of violence, as required by section 16–11–309(4), 8A C.R.S. (1986). The prosecution moved to dismiss the crime of violence count prior to the entry of judgment. The trial court granted the motion and subsequently found Terry guilty of assault in the second degree, as defined by section 18–3–203(1)(b). At sentencing, the prosecution argued that Terry, although a first-time offender, was not eligible for probation even though the crime of violence count had been dismissed. The trial court sentenced Terry to probation, concluding that in the absence of any request for the specific findings mandated by section 16–11–309(5), it was not prohibited from imposing such sentence.

The majority concludes that section 18–3–203(2)(c) prohibits the trial court from granting probation to Terry. That section states as follows:

> If a defendant is convicted of assault in the second degree pursuant to paragraph (b), (d), or (g) of subsection (1) of this section, the court shall sentence the defendant in accordance with the provisions of section 16–11–309, C.R.S.

§ 18–3–203(2)(c), 8B C.R.S. (1986).[1] This statute states in plain and unambiguous language that sentencing for the crime of second degree assault shall be carried out pursuant to all the provisions of section 16–11–309. There is no need to resort to other rules of statutory construction for an understanding of this clear legislative direction.

Section 16–11–309, adopted initially in 1976, establishes mandatory initial enhanced sentencing of incarceration for persons convicted of a crime of violence.[2] Its pertinent provisions, as applicable to Terry, state as follows:

> **Mandatory sentences for violent crimes.** (1)(a) Except as provided in paragraph (b) of this subsection (1), any person convicted of a crime of violence shall be sentenced pursuant to section 18–1–105(9), C.R.S., to a term of incarcer-

---

1. This subsection was amended in 1988. Ch. 125, sec. 4, 1988 Colo.Sess.Laws 716, 717.

2. Section 16–11–309(1)(a), 8A C.R.S. (1986), also authorizes modification of any initial sentence of incarceration, including a subsequent sentence to a term of probation.

ation greater than the maximum in the presumptive range, but not more than twice the maximum term, provided for such offense in section 18–1–105(1)(a), C.R.S., without suspension....

....

(2)(a)(I) "Crime of violence" means a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of any crime committed against an elderly or handicapped person or a crime of murder, first or second degree assault....

....

(4) In any case in which the accused is charged with a crime of violence as defined in subsection (2)(a)(I) of this section, the indictment or information shall so allege in a separate count, even though the use or threatened use of such deadly weapon or infliction of such serious bodily injury or death is not an essential element of the crime charged.

(5) The jury, or the court if no jury trial is had, in any case as provided in subsection (4) of this section shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime or whether such serious bodily injury or death was caused by the accused. If the jury or court finds that the accused used, or possessed and threatened the use of, such deadly weapon or that such injury or death was caused by the accused, the penalty provisions of this section shall be applicable....

§ 16–11–309, 8A C.R.S. (1986). As the majority recognizes, at 376, it is our duty to construe separate sections of a comprehensive statutory scheme together, as a whole, and give full effect to each such section. § 2–4–201(1)(b), 1B C.R.S. (1980); *People v. Guenther,* 740 P.2d 971 (Colo.1987). Only in this way can we faithfully fulfill our constitutional function of effectuating expressed legislative intent. *People v. District Court,* 713 P.2d 918, 921 (Colo.1986). However, the majority concludes that the language of subsections 16–11–309(4) and (5), though never repealed, no longer has

meaning and therefore need not be construed. I believe that section 18–3–203(2)(c) and subsections 16–11–309(4) and (5), when construed together, establish a clear and consistent legislative intent to encourage enhanced punishment for crimes such as second degree assault while authorizing prosecutors and trial courts to consider whether in some circumstances a first-time perpetrator of a crime of violence might be eligible for probation. This conclusion is not compelled, of course, if the mandatory procedural provisions of subsections 16–11–309(4) and (5) need not be considered.

The provisions of subsections 16–11–309(4) and (5) serve several important functions. This court and the Court of Appeals have recognized that these procedural provisions are mandatory and that failure to follow them constitutes error. *People v. Russo,* 713 P.2d 356 (Colo.1986); *see People v. Grable,* 43 Colo.App. 518, 519, 611 P.2d 588, 589 (1979), *cert. denied* (1980). While section 16–11–309 does not itself constitute a substantive offense, *People v. Eggers,* 196 Colo. 349, 585 P.2d 284 (1978), notice that the enhanced sanctions established by that statute will be invoked in a particular case may be essential to allay constitutional due process concerns. *See People v. Montoya,* 736 P.2d 1208 (Colo.1987); *People v. Eggers.* While other forms of notice might suffice, the General Assembly adopted subsections 16–11–309(4) and (5) as the method for invoking the enhanced sentencing provisions of section 16–11–309. The majority ignores this legislative directive by concluding that subsections 16–11–309(4) and (5) have no meaning.

The requirement that the prosecution allege and prove the commission of a crime of violence before the enhanced sentencing provisions of section 16–11–309 may be imposed also reflects careful legislative attention to the fact that in some circumstances a person who commits a crime that appears to meet the definition of "crime of violence" does not, in fact, satisfy that definition. For example, the mere possession of a weapon by a person convicted of assault with a deadly weapon does not invariably

satisfy the requirement of section 16–11–309 that the person use or threaten to use such weapon during the commission of the crime. *See People v. Badhawk,* 761 P.2d 753 (Colo.1988). Only by requiring separate specific findings that the definition of "crime of violence" has been satisfied, as the General Assembly has done in section 16–11–309(5), can such difficulty be eliminated.

In sum, I conclude that all of the language of all these statutory provisions demonstrates a careful, coherent legislative scheme to encourage severe and certain punishment for perpetrators of certain specified crimes while recognizing that in some circumstances prosecutors and trial courts may consider probation as an appropriate sentencing alternative. Surely we do not denigrate the General Assembly's determination that perpetrators of violent crimes should in general receive enhanced sentences of incarceration by carrying out the General Assembly's complementary conclusion that in isolated cases probation might constitute an appropriate sanction.

The majority finds support for its conclusion from isolated comments found in the extensive legislative history respecting the 1986 amendments to section 18–3–203. Legislative history should be consulted only when legislative intent cannot be gleaned from the language of the statute as adopted by the General Assembly. *Kern v. Gebhardt,* 746 P.2d 1340 (Colo. 1987); *Charnes v. Lobato,* 743 P.2d 27 (Colo.1987). As previously indicated, the legislative intent underlying these two statutes is clearly discernible from the statutes themselves. Assuming, however, that resort to legislative history is warranted in this case, review of the extensive records of relevant hearings and debates surrounding the adoption of the 1986 amendments to section 18–3–203 and the adoption of section 16–11–309 in 1976 compels a very different conclusion with respect to the intent of the General Assembly than that reached by the majority.

The majority suggests that the amendments adopted in 1986 were intended to "change the law regarding sentencing ... specifically, to mandate a more severe sentence as provided in section 16–11–309." At 377. The recorded proceedings certainly establish that the General Assembly intended to create more severe sanctions for persons convicted of having committed violent crimes. However, the record is also clear that the General Assembly did not intend to alter the basic structure of section 16–11–309. The majority apparently means that it discerns a legislative intent to create enhanced sentencing as provided in section 16–11–309 except for subsections 16–11–309(4) and (5). Had the General Assembly in 1986 wished to repeal the mandatory procedural provisions of subsections 16–11–309(4) and (5), it surely would have done so. It did not. Rather, as will be noted, it in fact reaffirmed its decision in 1976 to authorize trial courts and prosecutors to consider probation as a sentencing alternative for certain perpetrators of violent crimes.

As the majority acknowledges, the primary purpose of the 1986 amendments to section 18–3–203, 8B C.R.S. (1986), was to clarify the language of specific statutes defining substantive offenses because of concern by district attorneys over the potential effect of the decision of the Court of the Appeals in *People v. Montoya,* 709 P.2d 58 (Colo.App.1985), *rev'd,* 736 P.2d 1208 (Colo.1987).[3] Representative Don Mielke, one of the thirty-seven sponsors of H.B. 1008, testified before the House Judiciary Committee in support of the bill that the proposed amendments were designed to clean up the crime of violence statute and were not intended to add anything more to it.[4] *Hearing on H.B. 1008 Before the House Judiciary Committee,* 55th Gen.Assem., 2d Reg.Sess., Jan. 14, 1986 (hearing tape 86–15). Other statements in the

3. This court disapproved that decision in *People v. Haymaker,* 716 P.2d 110, 118 (Colo.1986), and reversed it in *People v. Montoya,* 736 P.2d 1208 (Colo.1987).

4. Representative Mielke also stated that the bill was a "rewrite of our present Colorado statute" and that "[w]e have in fact two crime of violence [statutes] there on the books."

record of the proceedings concerning H.B. 1008 also establish that those favoring passage of the bill did not believe the proposed amendments would affect the basic framework of preexisting section 16–11–309.

In view of this equivocal testimony and in consideration of the fact that the legislative history surrounding the adoption of H.B. 1008 is voluminous, reliance on any isolated portion of that history should at best be viewed with caution. In the absence of some express indication that the proponents and supporters of H.B. 1008 intended to repeal the discretionary sentencing provisions incorporated by the General Assembly in subsections 16–11–309(4) and (5), I cannot read into a one-sentence comment by one sponsor of H.B. 1008 a legislative intent to repeal such prior legislation *sub silentio.*

There can be no doubt concerning the General Assembly's intent to authorize discretionary sentencing to probation in section 16–11–309. That statute was adopted in 1976. During the debate concerning its complex and then novel provisions, as proposed in H.B. 1111, Representative Jerry Kopel, a sponsor of that bill, testified before the House Judiciary Committee that under section 16–11–309 "where there has been a violent crime committed and there is the presence of unusual and attenuated circumstances, the court might still grant probation." *Hearing on H.B. 1111 Before the Senate Judiciary Committee,* 50th General Assembly, 2d Reg.Sess., March 25, 1976 (hearing tape 76–7A). Denver District Attorney Dale Tooley, a supporter of H.B. 1111, also testified that the new statute required alleging a crime of violence in a separate count and would provide certainty in sentencing without destroying the discretion of the court. *Id.* Thus the legislative history of section 16–11–309 reveals a clear legislative purpose to ensure that prosecutors and trial courts retained discretion to consider probation as a sentencing alternative for some perpetrators of violent crimes. Whatever arguments might be advanced concerning the merits of such a policy determination, the inclusion of this component in the basic violent crimes sentencing statute represents a deliberate policy choice which the General Assembly alone has the authority to make.

Finally, it must be observed that in concluding that the statutes in question are ambiguous the majority fails to accord adequate weight to the well-established rule of construction that when penal statutes are ambiguous they must be construed in a manner that favors the liberty interest of the defendant. *People v. Saathoff,* 790 P.2d 804 (Colo.1990); *People v. Tenneson,* 788 P.2d 786 (Colo.1990); *People v. Newton,* 764 P.2d 1182 (Colo.1982). Application of the rule of lenity here compels the conclusion that the comprehensive and interrelated sentencing scheme for perpetrators of statutorily defined crimes of violence embodied in sections 16–11–309 and 18–3–203 must be construed to preserve judicial discretion to sentence such defendants to probation. Such construction fully implements the legislative intent underlying these statutes.

The issue posed in this case is the difficult question of what sentencing scheme with regard to defendants who commit violent crimes is reflected in these two related statutes. In my view, the plain language of both acts clearly expresses a legislative intent to require imposition of lengthy sentences of incarceration on most perpetrators of violent crimes while preserving the discretionary authority of trial courts to sentence some such felons to probation.

Nothing in the lengthy legislative history surrounding the adoption of H.B. 1008 supports the conclusion that in amending section 18–3–203 the General Assembly intended to repudiate a sentencing policy adopted after extensive consideration ten years earlier. By concluding that subsections 16–11–309(4) and (5) no longer have any meaning, the majority opinion in effect repeals those provisions and introduces some constitutional tension into the application of the crime of violence statute.

In my view, the trial court was authorized by the sentencing scheme established by sections 18–3–203(2)(c) and 16–11–309 to sentence Terry to probation. I therefore

respectfully dissent from the majority opinion.

I am authorized to say that Chief Justice QUINN and Justice MULLARKEY join in this dissent.