John Edward TERRY, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 98SC23.

Supreme Court of Colorado,
En Banc.

April 19, 1999.

Rehearing Denied May 24, 1999.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

Jeanne M. Smith, District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We are called upon to determine whether conspiracy to commit a per se crime of violence is itself a per se crime of violence for purposes of mandatory sentencing under section 16–11–309, 6 C.R.S. (1998). We conclude that it is.

Petitioner John Edward Terry was charged with aggravated robbery, conspiracy to commit aggravated robbery, and two crime of violence counts. After being advised by the court that the presumptive sentencing range for conspiracy to commit ag-

gravated robbery was two to six years, Terry pled guilty to that offense in exchange for the dismissal of the other three counts. The trial court then sentenced Terry to three years imprisonment at the Department of Corrections. After the court imposed the three-year sentence, the People argued that the mandatory violent crime sentencing provisions of section 16–11–309 should apply, making five years imprisonment the minimum lawful sentence. The trial court rejected this argument and the People appealed.

Relying on this court's unrelated 1990 decision in *People v. Alonzo Terry*,[1] the court of appeals ruled that a conviction for conspiracy to commit aggravated robbery as defined in section 18–4–302(1)(b), 6 C.R.S. (1998), requires automatic application of the violent crime sentencing guidelines, even if the defendant is not separately charged and convicted of committing a violent crime. *See People v. John Edward Terry*, 961 P.2d 500, 503 (Colo.App.1997). Because, as a crime of violence, Terry's offense was also an extraordinary risk crime, the court of appeals determined the appropriate presumptive sentencing range to be two to eight years rather than two to six years.[2] The court of appeals further determined that because Terry was convicted of a crime of violence, section 16–11–309(1)(a) required the imposition of a sentence at least in the midpoint of the two-to-eight-year presumptive range, or five years.

Accordingly, the court of appeals vacated Terry's sentence and remanded his case for resentencing.[3]

We accepted certiorari, and we now affirm.

## I.

Our inquiry turns first to the structure and evolution of Colorado's violent crimes sentencing statute. The crime of violence sentencing guidelines are contained in section 16–11–309(1)(a), which provides that "any person convicted of a crime of violence shall be sentenced ... to a term of incarceration of at least the midpoint in the presumptive range, but not more than twice the maximum term." § 16–11–309(1)(a).

The criteria and procedures for determining whether a crime qualifies as a crime of violence are set forth in subsections (2) and (4) through (7) of section 16–11–309. Subsection (2)(a)(II) lists ten types of offenses for which crime of violence sentencing may potentially apply.[4] Under subsections (4) and (5), prosecutors must separately plead and prove the elements of a crime of violence. These elements are that the defendant, in the commission, attempted commission, or conspiracy to commit one of the ten enumerated types of crimes: "(A) Used, or possessed and threatened the use of, a deadly weapon; or (B) Caused serious bodily injury or death to any other person except another participant."

1. 791 P.2d 374 (Colo.1990) (holding that a reference to the violent crime sentencing statute in the second degree assault statute required automatic imposition of violent crime sentencing for a defendant convicted of second degree assault).

2. Section 16–11–309 crimes of violence are a subset of extraordinary risk crimes under section 18–1–105(9.7)(b)(XII), 6 C.R.S. (1998). The General Assembly has determined that extraordinary risk crimes "present an extraordinary risk of harm to society," and thus require increased sentences in the interest of public safety. § 18–1–105(9.7)(a). Section 18–1–105(9.7)(a) requires that two years be added to the maximum sentence in the presumptive range for class four felonies constituting extraordinary risk crimes. Because conspiracy to commit aggravated robbery is a class four offense, its presumptive sentencing range shifts from two to six years to two to eight years if it qualifies as an extraordinary risk crime. *See* § 18–1–105(1)(a)(V)(A), 6 C.R.S. (1998); § 18–2–206, 6 C.R.S. (1998).

3. The court of appeals observed that it would also be possible for Terry to withdraw his plea under *People v. Coleman*, 844 P.2d 1215 (Colo. App.1992), because the trial court incorrectly advised him of the minimum sentence he was eligible to receive. *See John Edward Terry*, 961 P.2d at 503. Alternatively, the court of appeals noted that the trial court could modify Terry's sentence under section 16–11–309(1)(a) upon a showing of unusual and extenuating circumstances. *See id.* at 502–03. We agree with the observations of the court of appeals on these points, but we also agree with their conclusion that these factors do not affect the analysis of the statutory construction issues in this case.

4. *See* § 16–11–309(2)(a)(II). These ten offenses are: (a) any crime against an at-risk adult or at-risk juvenile; (b) murder; (c) first or second degree assault; (d) kidnapping; (e) sexual assault; (f) aggravated robbery; (g) first degree arson; (h) first degree burglary; (i) escape; or (j) criminal extortion. *See id.*

§ 16–11–309(2)(a)(I)(A), (B). Thus, the People may bring a crime of violence charge against a defendant "even though the use or threatened use of such deadly weapon or infliction of serious bodily injury or death is not an essential element of the crime charged." § 16–11–309(4). However, in order for the mandatory sentencing requirements of section 16–11–309(1)(a) to apply, the finder of fact must determine specifically that the prosecution has proven the crime of violence elements. *See* § 16–11–309(7).

Ten years after the General Assembly originally enacted section 16–11–309, it eliminated the separate pleading and proof requirements for certain substantive crimes that are inherently violent. *See* ch. 138, secs. 1–9, 1986 Colo. Sess. Laws. 776–78 (HB 86–1008); *see also Alonzo Terry,* 791 P.2d at 374. In a 1986 omnibus crime bill, the General Assembly amended the sections defining nine substantive criminal offenses falling under the ten enumerated types of crimes in section 16–11–309(2)(a)(II).[5] The amendments added identical language to each of the nine offenses, mandating that any defendant who is convicted of that offense "shall be sentenced by the court in accordance with the provisions of section 16–11–309." *See* Ch. 138, secs. 1–9, 1986 Colo. Sess. Laws. 776–78.

This set of amendments soon led to a dispute similar both in name and substance to the one before us today. *See Alonzo Terry,* 791 P.2d at 374. In *Alonzo Terry,* the defendant was convicted of one of the nine amended offenses, second degree assault with the use of a deadly weapon. *See* § 18–3–203(1)(b), (2)(c), 8B C.R.S. (1986) (codified as amended at section 18–3–203(1)(b), (2)(c), 6 C.R.S. (1998)). In addition, the People initially charged him with an associated vio-

lent crime count, but later dropped that charge. Thus, the defendant was not separately charged and convicted of committing a crime of violence. Nonetheless, relying on the 1986 omnibus amendment to the second degree assault statute,[6] the trial court sentenced the defendant in accordance with the mandatory requirements of section 16–11–309(1)(a).

On appeal to this court, the defendant in *Alonzo Terry* argued that his sentence should be vacated because the General Assembly intended its generalized reference to section 16–11–309 in section 18–3–203(2)(c) simply to refer courts to the procedural requirements of section 16–11–309, not to impose mandatory violent crime sentences upon defendants convicted of second degree assault with the use of a deadly weapon. *See Alonzo Terry,* 791 P.2d at 376. Thus, the defendant argued that he was not subject to enhanced sentencing under section 16–11–309, because the prosecution had not separately pled and proven a violent crime count against him in accordance with section 16–11–309(4) and (5). *See id.*

We disagreed. We noted that the reference in section 18–3–203(2)(c) to section 16–11–309 was ambiguous, in that it was "susceptible to reasonable, alternative interpretations." *Alonzo Terry,* 791 P.2d at 376 (citing *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989)). However, observing that "each of the [amended] statutes contains elements of bodily injury or use of a deadly weapon, the same elements necessary to impose a sentence under section 16–11–309," we held that the purpose of the amendments was to "mandate sentencing under section 16–11–309 irrespective of any allegation of a violent crime and irrespective of a specific finding by the trial court that a violent crime

---

5. *See* ch. 138, secs. 1–9, 1986 Colo. Sess. Laws. 776–78 (HB 86–1008). The nine offenses modified were: section 18–3–103(4), 6 C.R.S. (1998) (second degree murder); section 18–3–202(2)(c), 6 C.R.S. (1998) (first degree assault); section 18–3–203, 6 C.R.S. (1998) (second degree assault); section 18–3–209, 8B C.R.S. (1986) (assault against the elderly or persons with disabilities); (repealed 1995 Colo. Sess. Laws 1251); section 18–3–302, 6 C.R.S. (1998) (second degree kidnapping); section 18–3–404(3), 6 C.R.S. (1998) (third degree sexual assault); section 18–3–

405(3), 6 C.R.S. (1998) (sexual assault against a child); section 18–4–102(3), 6. C.R.S. (1998) (first degree arson), and; section 18–4–302(4), 6 C.R.S. (1998) (aggravated robbery).

6. Like the other eight offenses, section 18–3–203(2)(c) stated that if a person is convicted of violating section 18–3–203(1)(b), "the court shall sentence the defendant in accordance with the provisions of section 16–11–309." § 18–3–203(2)(c).

has been committed." *Alonzo Terry,* 791 P.2d at 377–78. In this regard, we noted that section 18–3–203(2)(c)'s "use of the word 'shall' signifies the legislature's directive that courts must impose a violent crime sentence pursuant to section 16–11–309." *Id.* at 379.

We further noted that this interpretation was supported by the legislative history to the 1986 omnibus criminal bill, which indicated that the bill's nine amendments resulted from the General Assembly's desire to avoid potential equal protection concerns in the context of section 16–11–309. *See id.* at 377–78. Specifically, we observed that the amendments in the 1986 bill were the General Assembly's response to a 1985 case in the court of appeals, *People v. Montoya,* 709 P.2d 58 (Colo.App.1985) (*Montoya I* ), rev'd, 736 P.2d 1208 (Colo.1987) (*Montoya II* ), concerning the constitutionality of the sentencing provisions in section 16–11–309. *See Alonzo Terry,* 791 P.2d at 377–78.

In *Montoya I,* the court of appeals considered whether the imposition of a crime of violence sentence violated equal protection guarantees where the defendant was convicted of first degree assault with a deadly weapon and an associated crime of violence count. *See Montoya I,* 709 P.2d at 60; § 18–3–202(1)(a), 8 C.R.S. (1978); § 16–11–309, 8A C.R.S. (1984 Supp.). The court of appeals noted that equal protection guarantees are "violated when identical criminal conduct is punished with disparate criminal sanctions, or when different criminal penalties are imposed for similar criminal acts, without any rational basis to distinguish the illegal conduct." *See Montoya I,* 709 P.2d at 60–61. Based on this standard, the court of appeals held that Montoya's convictions violated equal protection guarantees because section 16–11–309 required additional punishment without a finding of additional criminal conduct. *See id.* at 61. That is, the same element, use of a deadly weapon, was the basis of both the crime of violence count and the first degree assault with a deadly weapon count. *See id.*

As we noted in *Alonzo Terry,* the General Assembly intended its 1986 omnibus bill to avoid the equal protection concerns of *Montoya I* by imposing mandatory sentencing for defendants convicted of crimes whose elements overlapped those of section 16–11–309. To this end, the General Assembly designed the omnibus bill amendments to *mandate* sentencing under section 16–11–309, so that the resulting sentencing scheme operated "not as a sentence-enhancing statute but as a presumptive penalty statute." *Alonzo Terry,* 791 P.2d at 378.

Notably, at the same time as the General Assembly was considering the 1986 omnibus crime bill, this court was deliberating a case that would lead to the reversal of the court of appeals decision in *Montoya I. See People v. Haymaker,* 716 P.2d 110 (Colo.1986). In *Haymaker,* we considered an equal protection argument nearly identical to that of the defendant in *Montoya I.* Contrary to the court of appeals in *Montoya I,* however, we concluded that section 16–11–309 did not violate equal protection mandates because it contemplated equal punishments for all defendants convicted of both the underlying substantive offense and the associated crime of violence count. *See id.* at 117–18. We held that the General Assembly could reasonably conclude that more severe punishments were warranted for those who commit crimes with deadly weapons than for those who do not, and that therefore, increased penalties in the former case do not violate equal protection guarantees. One year later, we reversed the court of appeals' decision in *Montoya I* based on our holding in *Haymaker. See Montoya II,* 736 P.2d at 1208.

Thus, by the time this court considered *Alonzo Terry,* the constitutionality of section 16–11–309 as a presumptive sentencing statute was clearly established. However, in *Alonzo Terry,* this court nonetheless relied on the General Assembly's discussion of *Montoya I* as an indication of that body's intent to create a presumptive sentencing regime in the context of the nine per se crime of violence amendments. Furthermore, in line with our holdings in *Haymaker* and *Montoya II,* we held in *Alonzo Terry* that the 1986 omnibus bill did "no more than set a penalty range for particular crimes involving the use of a deadly weapon." *Alonzo Terry,* 791 P.2d at 378 (quoting *Haymaker,* 716 P.2d at 118). We found no error in

that regard, holding that "[t]he legislature certainly has the authority to establish more severe penalties for acts that it believes have graver consequences." *Alonzo Terry*, 791 P.2d at 378.

Thus, in effect, we held in *Alonzo Terry* that the omnibus bill created nine automatic or per se crimes of violence where the elements of the underlying crimes overlapped with the elements of the violent crimes sentencing statute. However, we issued a caveat to this holding, noting that the procedural requirements of section 16–11–309(4) and (5) "are unaffected and may continue to require that a prosecutor plead and prove a violent crimes count against a defendant whenever the substantive criminal statute does not specifically require sentencing under the violent crimes statute." *Id.* at 378 n. 5.

## II.

We now turn to the present case. In 1995, the General Assembly amended Colorado's criminal conspiracy statute to provide that "[c]onspiracy to commit any crime for which a court is required to sentence a defendant for a crime of violence in accordance with section 16–11–309, C.R.S., is itself a crime of violence for purposes of that section." Ch. 240, sec. 5, § 18–2–201(4.5), 1995 Colo. Sess. Laws 1250 (HB 95–1070) (codified at section 18–2–201(4.5), 6 C.R.S. (1998)).

▆ Terry contends that because the People dropped the two separate crime of violence counts against him as part of his plea agreement, the mandatory sentencing provisions of section 16–11–309(1)(a) are inapplicable to his case. He argues that section 18–2–201(4.5) is simply a cross-reference to section 16–11–309, such that conspiracies to commit violent crimes are themselves violent crimes only if pled and proven pursuant to the procedural requirements of section 16–11–309(2) and (5) through (7). In support of this contention, Terry argues that the failure of the

General Assembly to include the mandatory term "shall" in section 18–2–201(4.5)'s reference to section 16–11–309 implies that the General Assembly simply intended to include conspiracy within the list of enumerated crimes for which crime of violence sentences may be imposed if pled and proven.

We agree with Terry that the language of sections 16–2–201(4.5) and 16–11–309 is ambiguous, in that it "is susceptible to reasonable, alternative interpretations."[7] In light of our decision in *Alonzo Terry*, however, we hold that the proper interpretation of section 18–2–201(4.5) is that conspiracy to commit a per se crime of violence is itself a per se crime of violence.

Our analysis begins from the presumption that the General Assembly was familiar with our decision in *Alonzo Terry* when it amended the statute in question in 1995. *See, e.g., Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."). In fact, the General Assembly signaled this awareness in section 18–2–201(4.5) by stating that subsection (4.5) concerns "[c]onspiracy to commit any crime for which the court *is required to sentence* a defendant for a crime of violence." § 18–2–201(4.5) (emphasis added). Under *Alonzo Terry*, those crimes for which a court "is required to sentence a defendant . . . in accordance with section 16–11–309"[8] are per se crimes of violence: namely, the offenses identified in the 1986 omnibus bill as mandating violent crime sentencing.[9] Therefore, we interpret subsection (4.5) to mean that conspiracy to commit a per se crime of violence "*is itself a crime of violence* for purposes of [section 16–11–309]." § 18–2–201(4.5) (emphasis added).

The import of being a "crime of violence for purposes of [section 16–11–309]" is clearly that such conspiracies should receive mandatory violent crime sentencing. *See* § 18–2–

**7.** *Alonzo Terry*, 791 P.2d at 376. By one interpretation, conspiracy to commit a crime of violence automatically invokes the sentencing guidelines of section 16–11–309(1)(a). By a second interpretation, however, the prosecution must plead and prove that the conspiracy was itself a crime of violence in accordance with sections 16–11–309(2) and (4) through (7) before the sentencing guidelines of subsection (1) become mandatory.

**8.** § 18–2–201(4.5).

**9.** *See supra* note 5 and accompanying text.

201(4.5). Section 16–11–309(1)(a) states that "[a]ny person convicted of a crime of violence shall be sentenced . . . to a term of incarceration of at least the midpoint in the presumptive range." § 16–11–309(1)(a).

■ Finally, we note that Terry's contention that section 18–2–201(4.5) is simply a "cross-reference" to section 16–11–309 is without merit. In support of his contention, Terry points out that the court of appeals had previously held that only attempted or completed crimes fell within the ambit of section 16–11–309. *See People v. Flores,* 757 P.2d 159, 160 (Colo.App.1988) (holding that because "the general assembly did not expressly include conspiracy among those offenses defined as crimes of violence, we conclude that one convicted of conspiracy may not be sentenced pursuant to § 16–11–309(1)(a)").

Although this observation is correct, Terry's argument fails to account for the effect of a 1994 repeal and reenactment of section 16–11–309(2). *See* ch. 287, sec. 3, § 16–11–309, 1994 Colo. Sess. Laws 1714–15. Prior to this amendment, subsection (2)(a) stated:

(2)(a)(I) "Crime of violence" means a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of any crime committed against an elderly person, a person with a disability, or an at-risk adult or a crime of murder, first or second degree assault, kidnapping, sexual assault, robbery, first degree arson, first or second degree burglary, escape, or criminal extortion, or during the immediate flight therefrom, or the defendant caused serious bodily injury or death to any person, other than himself or herself or another participant, during the commission or attempted commission of any such felony or during the immediate flight therefrom.

§ 16–11–309(2)(a), 8A C.R.S. (1993). Hence, as the court of appeals noted in *Flores,* the statute did not refer to conspiracy to commit any of the listed offenses. The 1994 reenactment of section 16–11–309(2), however, modified subsection (2)(a) to its current form:

(2)(a)(I) "Crime of violence" means any of the crimes specified in subparagraph (II) of this paragraph (a) committed, conspired to be committed, or attempted to be committed by a person. . . .

. . . .

(II) Subparagraph (I) of this paragraph (a) applies to the following crimes:

(A) Any crime against an at-risk adult or at-risk juvenile;

(B) Murder;

(C) First or second degree assault;

(D) Kidnapping;

(E) Sexual Assault;

(F) Aggravated Robbery;

(G) First Degree Arson;

(H) First Degree Burglary;

(I) Escape; or

(J) Criminal Extortion.

Ch. 287, sec. 3, § 16–11–309, 1994 Colo. Sess. Laws 1715 (codified at § 16–11–309(2)(a)(I)–(II), 6 C.R.S. (1998)). Thus, following the 1994 amendments, the People could properly charge separate crime of violence counts against defendants accused of conspiracy to commit any of the ten types of crimes listed in section 16–11–309(2)(a)(II).

Furthermore, the ten types of crimes listed in subsection (2)(a)(II) include all nine of the per se crimes of violence. For instance, subparagraph (E) refers to "Aggravated robbery," which describes not only the three non-per se forms of aggravated robbery under section 18–4–302, but also aggravated robbery as described in section 18–4–302(1)(b), a per se crime of violence. *See* 18–4–302(4).

Therefore, following the 1994 amendments to section 16–11–309(2), conspiracy to commit any offense listed in subsection (2)(a)(II) was chargeable as a crime of violence, without regard to whether the commission of the completed offense would be a per se or a non-per se crime of violence. As such, we presume that the purpose of the 1995 amendment adding subsection (4.5) to section 18–2–201 was not simply to include conspiracy to commit per se or non-per se crimes of violence among those crimes eligible for crime of violence sentencing. *See People v. Hale,* 654 P.2d 849, 851 (Colo.1982) ("There is a

presumption that when a statute is amended there is an intent to change the law."). Similarly, we presume that subsection (4.5) is not simply a "cross-reference" to the language in the 1994 reenactment of section 16–11–309(2)(a)(I). *See id.*

■ In interpreting these statutes, we are mindful of the rule of lenity. Under this rule, we interpret ambiguities in penal codes in favor of the defendant. *See, e.g., People v. Russo,* 713 P.2d 356, 365 (Colo.1986) (applying the rule where the penal code was silent on the burden of proof); *People v. Lowe,* 660 P.2d 1261, 1267–68 (Colo.1983) (applying the rule to the consideration of whether a defendant could receive dual murder convictions for a single homicide). However, the rule of statutory construction "which demands that words be given their fair and ordinary meaning applies to penal as well as non-penal statutes, and giving statutory words their full meaning in the context in which they are used does not violate the rule of lenity." *People v. District Court,* 713 P.2d 918, 922 (Colo.1986); *see also Alonzo Terry,* 791 P.2d at 377 n. 4 ("[C]ourts may not apply the rule of lenity to defeat the evident intent of the legislature.").

■ As explained above, the defendant's interpretation of these statutes fails to give any meaning to the 1995 enactment of section 18–2–201(4.5). Thus, applying the rules of statutory construction to this case, we believe the defendant's view of the statutes is contrary to the evident intent of the legislature,

and we reject his interpretation. *See Alonzo Terry,* 791 P.2d at 376–77 (holding the rule of lenity inapplicable where the defendant's interpretation failed to give meaning to each statutory provision); *District Court,* 713 P.2d at 922 (same).

Based on the legislative history to the 1986 omnibus bill and upon our own interpretation of sections 18–2–201(4.5) and 16–11–309, we conclude that conspiracy to commit a per se crime of violence is itself a per se crime of violence, which the People need not separately plead and prove. Thus, we now turn to the final question of whether the underlying crime for Terry's conspiracy conviction was a per se crime of violence.

### III.

■ Here, Terry pled guilty to conspiracy to commit two alternative types of aggravated robbery: aggravated robbery in violation of section 18–4–302(1)(a) and aggravated robbery in violation of section 18–4–302(1)(b).[10] Of these two types of aggravated robbery, only conduct falling within subsection (1)(b) constitutes a per se crime of violence under *Alonzo Terry.*[11] The trial court fully advised Terry of the elements of both types of aggravated robbery, and Terry pled guilty to conspiracy to commit both. Hence, Terry was convicted of conspiracy to commit aggravated robbery in contravention of section 18–4–302(a) and (b). Because aggravated robbery under section 18–4–302(b) is a per se crime

---

10. The count to which Terry pled guilty stated:
    On or about March 19, 1996, JOHN EDWARD TERRY aka "JOHN JOHN," with the intent to promote and facilitate the commission of the crime(s), of Aggravated Robbery, as defined in C.R.S. 18–4–302(1)(a) and (1)(b), did unlawfully and feloniously agree with CHRISTIAN V. RODRIGUEZ ... that one or more of them would engage in conduct which constitutes said crime(s) and an attempt to commit said crime(s), and did agree to aid such other person or persons in the planning and commission and attempted commission of said crime(s), and an overt act in pursuance of such conspiracy was committed by himself and by one or more of the conspirators; in violation of Colorado Revised Statutes 18–2–201, as amended, Conspiracy to Commit Aggravated Robbery (F–4).

11. The aggravated robbery statute states:

(1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:
  (a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; or
  (b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury.
. . . .
(4) If a defendant is convicted of aggravated robbery pursuant to paragraph (b) of subsection (1) of this section, the court shall sentence the defendant in accordance with the provisions of section 16–11–309, C.R.S.
§ 18–4–302, 6 C.R.S. (1998).

of violence under the reasoning of this court's holding in *Alonzo Terry*, conspiracy to commit that crime "is itself a crime of violence" under section 18–2–201(4.5). Therefore, under our holding today, Terry must be sentenced according to the provisions of section 16–11–309(1)(a), resulting in a minimum lawful sentence of five years.[12]

We thus affirm the court of appeals' order vacating Terry's sentence, and we remand this case for further proceedings consistent with this opinion.

---

12. *See supra* note 2 and accompanying text.