The PEOPLE of the State of
Colorado, Petitioner,

v.

Thomas L. BANKS, Respondent.

No. 99SC225.

Supreme Court of Colorado,
En Banc.

Sept. 18, 2000.

As Modified on Denial of
Rehearing Oct. 10, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Julia A. Thomas, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Petitioner.

1. The issue on certiorari is: "Whether a crime that statutorily requires sentencing under the provisions of the crime of violence statute, § 16–11–309, C.R.S. (1998), must be treated as 'any crime of violence as defined in § 16–11–309,' for purposes of 'extraordinary risk' sentencing under § 18–1–105(9.7), C.R.S. (1998)."

David Kaplan, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this case to determine whether the crime of second degree assault on a peace officer, section 18–3–203(1)(c), 6 C.R.S. (1999), which directs that sentencing shall occur under section 16–11–309, 6 C.R.S. (1999), see § 18–3–203(2)(c), 6 C.R.S. (1999), invokes extraordinary risk sentencing under section 18–1–105(9.7)(b)(XII), 6 C.R.S. (1999) as a "crime of violence as defined in section 16–11–309."[1] The definition of a "crime of violence" in regard to second degree assault is contained in section 16–11–309(2)(a)(I)(A), (B), and (II)(C). Under these provisions, a crime of violence involves: (1) use, or possession and threatened use, of a deadly weapon, or (2) serious bodily injury or death to any other person except another participant.

In this case, Thomas L. Banks (Banks) was charged with and convicted of causing bodily injury, not *serious* bodily injury, to the police officer. There was no charge of use, or possession and threatened use, of a deadly weapon.[2] Thus, the trial court incorrectly invoked the extraordinary risk sentencing provision of section 18–1–105(9.7)(b)(XII) to increase the presumptive range set forth in section 16–11–309(1)(a). Accordingly, we affirm the judgment of the court of appeals.

## I.

During an arrest on an outstanding warrant, Banks became violent, biting Officer Heather Wood, breaking the skin on her arm and causing bruising, and kicking Officer Gene Sharla in the chest. A jury convicted Banks of second degree assault on Officer

2. The information, in pertinent part, charged Banks with "intent to prevent Heather Wood, whom he knew or reasonably should have known to be a police officer, from performing a lawful duty, did unlawfully, feloniously and intentionally cause bodily injury to Heather Wood."

Wood,[3] and third degree assault and resisting arrest[4] in regard to Officer Sharla.

The trial court imposed a five-year sentence on conviction for the second degree assault.[5] In sentencing Banks, it applied both the crime of violence statute, *see* § 16–11–309, and the extraordinary risk statute, *see* § 18–1–105(9.7). Explaining its intent to impose the minimum sentence, the court determined itself bound by the extraordinary risk statute to enhance Banks's sentence when calculating the permissible sentencing range:

> I am going to impose a sentence of five years in the Department of Corrections; *that's minimum,* but also the mandatory sentence that I have to impose. It is a crime of violence. It's [an] extraordinary risk crime, and also is a crime against a peace officer. I don't believe that more than that is necessary.

(Emphasis added.)

On appeal, the court of appeals held that the trial court correctly applied crime of violence sentencing, but erred in also applying extraordinary risk sentencing. *See People v. Banks,* 983 P.2d 102, 106–08 (Colo.App. 1999). Its decision, if upheld, would reverse and remand the case to the trial court for resentencing without application of extraordinary risk sentencing. We affirm the judgment of the court of appeals.

## II.

We hold that the offense of second degree assault on a peace officer incorporates the crime of violence statute as a sentencing provision in determining the presumptive penalty for this offense. *See* §§ 18–3–203(1)(c) & (2)(c); 16–11–309(1)(a). The extraordinary risk sentencing provisions of section 18–1–105(9.7)(b)(XII) do not apply in this case, however, because Banks was not charged with and convicted of a "crime of violence, as defined in section 16–11–309." As defined in section 16–11–309(2)(a)(I)(A), (B), and (II)(C), "a crime of violence" convic-

tion involving second degree assault must entail serious bodily injury or death, or using, or possessing and threatening to use, a deadly weapon, in order for extraordinary risk sentencing to apply.

We proceed with our analysis in two stages. First, we examine the offense of second degree assault on a peace officer. *See* § 18–3–203(1)(c). We conclude that this offense incorporates the mandatory sentencing range set forth in section 16–11–309(1)(a) of the crime of violence statute. *See* § 18–3–203(2)(c). We then examine the extraordinary risk statute, *see* § 18–1–105(9.7)(b)(XII), and its potential application in Banks's case to a crime of violence "as defined" in section 16–11–309(2)(a)(I)(A), (B) and (II)(C). We conclude that the trial court incorrectly applied extraordinary risk sentencing in Banks's case.

### A. Second Degree Assault on the Police Officer

In interpreting a statute, we endeavor to give effect to the intent of the legislature. *See Copeland v. People,* 2 P.3D 1283, 1286 (Colo.2000). We construe the various statutory provisions as a whole, giving "consistent, harmonious, and sensible effect" to each part whenever possible. *Cooper v. People,* 973 P.2d 1234, 1239 (Colo.1999). Before invoking alternative canons of statutory construction, we look first to the plain and ordinary meaning of the words the General Assembly has chosen to utilize. *See State v. Nieto,* 993 P.2d 493, 500 (Colo.2000). We determine that we can give effect to the plain language of the applicable statutes in this case.

Section 18–3–203(1) defines the offense of second degree assault on a peace officer:

(1) A person commits the crime of assault in the second degree if: …

(c) With intent to prevent one whom he or she knows, or should know, to be a peace officer or firefighter from per-

---

**3.** *See* § 18–3–203(1)(c), 6 C.R.S. (1999).

**4.** *See* §§ 18–3–204, –8–103(1)(a), 6 C.R.S. (1999).

**5.** Pursuant to Banks's sentence, the six–month sentence for third degree assault and six-month sentence for resisting arrest run concurrently with the sentence for second degree assault on the police officer.

forming a lawful duty, he or she intentionally causes bodily injury to any person.

Section 18–3–203(2)(b) states that assault in the second degree is a class four felony where a heat of passion affirmative defense does not apply.[6] Regarding sentencing, section 18–3–203(2)(c) further provides:

> (c) If a defendant is convicted of assault in the second degree pursuant to paragraph ... (c) ... of subsection (1) ... the court shall sentence the defendant in accordance with the provisions of section 16–11–309, C.R.S.

Thus, while the elements comprising second degree assault on a peace officer are located in section 18–3–203(1)(c), the actual sentencing range is determined by reference to section 16–11–309(1)(a).

In 1988, the General Assembly amended the sections of the code dealing with crimes against peace officers and firefighters. The legislative declaration of purpose for the 1988 amendments explained the State of Colorado's interest in increasing the penalties for crimes against peace officers and firefighters:

> The general assembly recognizes that protection of peace officers and firemen from crime is a major concern of our state because society depends on peace officers and firemen for protection against crime and other dangers and because peace officers and firemen are disproportionately damaged by crime because their duty to protect society often places them in dangerous circumstances. Society as a whole benefits from affording special protection to peace officers and firemen because such protection deters crimes against them and allows them to better serve and protect our state. *The general assembly therefore finds that the penalties for assaults on peace officers and firemen should be more severe than the penalties for assaults on other members of society.*

Ch. 125, sec. 1, 1988 Colo. Sess. Laws 716 (emphasis added) (codified as amended at § 18–3–107(5), 6 C.R.S. (1999)).

Accordingly, the Assembly amended section 18–3–203(2)(c) to add the offense of second degree assault on a peace officer to the list of offenses that "shall" receive the more severe range of punishment available under the sentencing provisions of section 16–11–309(1). *See* ch. 125, sec. 1, § 18–3–203, 1988 Colo. Sess. Laws 716, 717–718 (adding section 18–3–203(1)(c) to the list of offenses that "shall" be sentenced under 16–11–309).

Section 16–11–309(1) directs a court, using the statutory sentencing range for the underlying crime, to sentence a defendant to at least half of the presumptive range but not more than twice the maximum. In Banks's case the trial court stated its intent to impose the minimum sentence. The minimum sentence would have been four years—the midpoint of the presumptive range of two to six years for a class 4 felony. *See* §§ 16–11–309(1)(a); 18–1–105(1)(a)(V)(A). Extraordinary risk sentencing under section 18–1–105(9.7)(a) provides that, for class 4 felonies, the maximum sentence in the presumptive range is increased by two years; thus, the maximum sentence for a class 4 felony is increased to eight years. As the trial court determined, the mid-point "minimum" under section 16–11–309(1)(a), would be five years in Banks's case if extraordinary risk sentencing were applied. We now examine whether the trial court correctly applied extraordinary risk sentencing to Banks's conviction.

### B.  Extraordinary Risk Sentencing

Section 18–1–105(9.7)(a) provides:

> The general assembly hereby finds that certain crimes which are listed in paragraph (b) of this subsection (9.7) present an extraordinary risk of harm to society and therefore, in the interest of public safety ... for such crimes which constitute class 4 felonies, the maximum sentence in the presumptive range shall be increased by two years....

Section 18–1–105(9.7)(b) then lists the offenses to which extraordinary risk sentencing applies. This listing specifies offenses of sexual assault, incest, child abuse, and bur-

---

6. Under the state's general criminal sentencing guidelines, class four felonies have a sentencing range of two to six years of incarceration. *See* § 18–1–105(1)(a)(V)(A), 6 C.R.S. (1999).

glary, but also includes crimes of violence "as defined in" section 16–11–309:

> (b) Crimes which present an extraordinary risk of harm to society shall include the following: ...
>
> (XII) Any crime of violence, *as defined in* section 16–11–309 ...

(Emphasis added.)

The "crime of violence" definitions thus invoked by section 18–1–105(9.7)(b)(XII) are set forth in section 16–11–309(2)(a) and (b).[7] Section 16–11–309(2)(a)(I) defines a "crime of violence" as follows:

> (I) "Crime of violence" means any of the crimes specified in subparagraph (II) of this paragraph (a) committed, conspired to be committed, or attempted to be committed by a person during which, or in the immediate flight therefrom, the person:
>
> (A) Used, or possessed and threatened the use of, a deadly weapon; or
>
> (B) Caused serious bodily injury or death to any other person except another participant.

Section 16–11–309(2)(a)(II), in turn, lists ten classes of crimes for purposes of subsection (2)(a)(I):

> (A) Any crime against an at-risk adult or at-risk juvenile;
>
> (B) Murder;
>
> (C) First or second degree assault;
>
> (D) Kidnapping;
>
> (E) Sexual assault;
>
> (F) Aggravated robbery;
>
> (G) First degree arson;
>
> (H) First degree burglary;
>
> (I) Escape; or
>
> (J) Criminal extortion.

In addition, section 16–11–309(4) and (5) provide the pleading and proof requirements for a defendant to be sentenced for committing a "crime of violence" when the statute defining the offense does not have an element that overlaps with section 16–11–309(2)(a)(I)(A) or (B). *See John Edward Terry v. People*, 977 P.2d 145, 148–49 (Colo. 1999) (*Terry II*); *People v. Alonzo Terry*,

791 P.2d 374, 378–79 (Colo.1990) (*Terry I*). Section 16–11–309(4) addresses these pleading requirements:

> In any case in which the accused is charged with a crime of violence as defined in subsection (2)(a)(I) of this section, the indictment or information shall so allege in a separate count, even though the use or threatened use of such deadly weapon or infliction of such serious bodily injury or death is not an essential element of the crime charged.

Section 16–11–309(5) states the finding of fact requirements:

> The jury, or the court if no jury trial is had, in any case as provided in subsection (4) of this section shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime or whether such serious bodily injury or death was caused by the accused. If the jury or court finds that the accused used, or possessed and threatened the use of, such deadly weapon or that such injury or death was caused by the accused, the penalty provisions of this section shall be applicable.

■ The prosecution here contends that, because section 18–3–203(2)(c) invokes mandatory sentencing under the crime of violence statute, second degree assault on a police officer is also "a crime of violence" for purposes of extraordinary risk sentencing. We disagree. This argument overlooks the plain wording of the applicable statutes.

Although in *Terry II*, 977 P.2d at 146 n. 2, we observed that the defendant had received an extraordinary risk sentence, we did not have occasion to construe the extraordinary risk statute. Instead, we addressed the subject of mandatory crime of violence sentencing under section 16–11–309(1).

We recognized in *Terry I* and *Terry II* that the legislature intended for some crimes to be exempt from the pleading and proof requirements of section 16–11–309(4) and (5). We addressed issues of statutory construction stemming from the General Assembly's

---

**7.** Section 16–11–309(2)(b) addresses unlawful sexual offenses and is not applicable in this case.

1986 and 1995 amendments to the crime of violence statute. In 1986, the legislature amended nine substantive criminal offenses, adding language to each stating that sentencing for that offense "shall" be accomplished pursuant to section 16–11–309.[8] In *Terry I* we assumed that each of the nine substantive criminal offenses amended in 1986 to mandate sentencing under section 16–11–309 itself contained an element of either serious bodily injury or death, or the use, or possession and threatened use, of a deadly weapon. *See Terry I*, 791 P.2d at 378. We called these offenses *per se* crimes of violence and held that the prosecution need not plead and prove a separate crime of violence under sections 16–11–309(4) and (5) in order for the sentencing provisions of section 16–11–309(1) to apply. *See id.* at 376–77.

◼ We repeated this assumption in *Terry II*, and held that section 16–11–309(1) operates as a presumptive penalty statute for those offenses, meaning that it sets the penalty without requiring separate or additional proof of the elements under section 16–11–309(4) and (5). *See Terry II*, 977 P.2d at 147–49; *Terry I*, 791 P.2d at 378. We also suggested, but did not explicitly hold, that when the statute defining the offense does not prescribe crime of violence sentencing for the offense, the prosecution must meet the pleading and proof requirements of section 16–11–309(4) and (5) in order for the defendant to be sentenced for a crime of violence. *See Terry II*, 977 P.2d at 149. We do so now.

In *Terry II* we noted that the 1986 amendments had "added identical language to each of the nine offenses, mandating that any defendant who is convicted of that offense 'shall be sentenced by the court in accordance with the provisions of section 16–11–309.'" *Terry II*, 977 P.2d at 147. We then reasoned, as to the conviction for conspiracy to commit aggravated robbery in *Terry II*, that the General Assembly intended mandatory crime of violence sentencing to apply because the General Assembly in 1995 added section 18–2–201(4.5). This section states that: "Conspiracy to commit any crime for which a court is required to sentence a defendant for a crime of violence in accordance with section 16–11–309, C.R.S., is itself a crime of violence for the purposes of that section." Ch. 240, sec. 5, § 18–2–201, 1995 Colo. Sess. Laws 1249, 1250 (codified at § 18–2–201(4.5), 6 C.R.S. (1991)).

◼ In sum, *Terry I* and *Terry II* stand for the proposition that crime of violence sentencing under section 16–11–309 applies when (1) the statute defining the offense specifically requires sentencing under that section, or (2) the prosecution pleads and proves use, or possession and threatened use, of a deadly weapon, or serious bodily injury or death, as to eligible crimes listed in section 16–11–309(2)(a)(II), either as part of the underlying offense or separately.[9] *See* § 16–11–309(2)(a),(4) & (5); *Terry II*, 977 P.2d at 145, 149. We have used the term *per se* crime of violence in referring to the first category. *See Terry II*, 977 P.2d at 149 (stating that those crimes for which a court is required to sentence a defendant in accordance with section 16–11–309 are *per se* crimes of violence for purposes of sentencing under section 16–11–309(1)(a)).

Thus, the case before us in *Banks* involves a *per se* crime of violence because the statute defining the offense of second degree assault on a peace officer requires crime of violence sentencing under section 16–11–309: "[T]he court shall sentence the defendant in accordance with the provisions of section 16–11–309." § 18–3–203(2)(c); *Terry II*, 977 P.2d at 149 ("The import of being a 'crime of violence

---

8. The nine amended offenses were: (1) Murder in the second degree; (2) Assault in the first degree; (3) Assault in the second degree; (4) Assault on the elderly or the handicapped; (5) Second degree kidnapping; (6) Sexual assault in the third degree; (7) Sexual assault on a child; (8) First degree arson; and (9) Aggravated robbery. *See* ch. 138, secs. 1–9, §§ 18–3–103, –202, –203, –209, –302, –404, –405, –4–102, –302, 1986 Colo. Sess. Laws 776, 776–78.

9. In *Terry II*, 977 P.2d at 149, referring to *Terry I*, 791 P.2d at 378 n. 5, we said: "However, we issued a caveat to this holding, noting that the procedural requirements of section 16–11–309(4) and (5) 'are unaffected and may continue to require that a prosecutor plead and prove a violent crimes count against a defendant whenever the substantive criminal statute does not specifically require sentencing under the violent crimes statute.'"

for purposes of [section 16–11–309]' is clearly that such conspiracies should receive mandatory violent crime sentencing")(alteration in original). However, the extraordinary risk sentencing provision of section 18–1–105(9.7)(b)(XII)—because of its specific reference to the definitions found in section 16–11–309—would apply to Banks only if he had been charged and convicted of causing *serious* bodily injury or death, or using, or possessing and threatening to use, a deadly weapon: "Crimes which present an extraordinary risk of harm to society shall include the following: ... Any crime of violence, *as defined in* section 16–11–309." § 18–1–105(9.7)(b)(XII)(emphasis added). For purposes of Banks's case, this definition is found in section 16–11–309(2)(a)(I)(A) and (B) and must involve serious bodily injury, or use, or possession and threatened use, of a deadly weapon.

Comparison of the mandatory crime of violence statute and the extraordinary risk statute demonstrates that the General Assembly has been selective in determining when the presumptive sentencing range of the crime of violence statute is increased by the extraordinary risk statute. The General Assembly adopted the extraordinary risk statute in 1993. *See* ch. 322, sec. 9, § 18–1–105(9.7), 1993 Colo. Sess. Laws 1983–84. Section 18–1–105(9.7)(b)(XII), the provision we address here, specifically refers to and invokes the definitions set forth in section 16–11–309.

The definition section of the crime of violence statute is contained in section 16–11–309(2). Section 16–11–309(2)(a)(II) lists a number of crimes, including second degree assault, and recites that "[s]ubparagraph (I) of [ ] paragraph (a) applies." Subparagraph (I) plainly recites that each of the crimes listed in subparagraph (II) is "a [c]rime of violence" if "during which, or in the immediate flight therefrom, the person: (A) [u]sed, or possessed and threatened the use of, a deadly weapon; or (B) caused serious bodily injury or death to any other person except another participant." § 16–11–309(2)(a)(I)(A) & (B).

■ We are required to effectuate the General Assembly's choice of wording if the result of doing so is not absurd. *See Cooper,*

973 P.2d at 1239. The result in this case is not absurd, as it comports with the goals of the criminal law to separate more culpable from less culpable conduct. According to the legislature's prescription, a defendant who is charged with and convicted of assault and inflicting *serious* bodily injury on a police officer, or using, or possessing and threatening to use, a deadly weapon, will be sentenced more heavily than a defendant, like Banks, who is charged with and convicted of causing bodily injury. The extraordinary risk sentencing provision is triggered in the first instance, but not in the second.

■ Specification of a range of punishment for particular crimes is within the traditional powers of the General Assembly. *See* Colo. Const. art. V, § 1; *Copeland,* 2 P.3D at 1286 (observing that the "power to define criminal conduct ... is vested in the General Assembly"); *Terry I,* 791 P.2d at 378–79 (noting "[t]he legislature certainly has the authority to establish more severe penalties for acts that it believes have graver consequences").

The second degree assault on a peace officer statute directs that "the court shall sentence the defendant in accordance with the provisions of section 16–11–309." § 18–3–203(2)(c), 6 C.R.S. (1999). We have repeatedly described this type of sentencing provision to be a legitimate product of the legislature's intent to increase presumptive penalties for a particular offense. *See, e.g., Terry II,* 977 P.2d at 148–49 (explaining that the General Assembly intended to "create a presumptive sentencing regime in the context of the ... crime of violence amendments"); *Terry I,* 791 P.2d at 378 (stating that, in directing sentencing for certain crimes to occur under section 16–11–309, the legislature did "no more than set a penalty range for particular crimes").

■ However, the offense of which Banks was charged and convicted, section 18–3–203(1)(c), second degree assault on a peace officer, does not contain serious bodily injury, or use, or possession and threatened use of, a deadly weapon as one of its elements; nor was Banks separately charged with and convicted of causing serious bodily

injury or death, or using, or possessing and threatening the use of, a deadly weapon.[10] Hence, the trial court erred in increasing his crime of violence sentence by an extraordinary risk sentence. *See* §§ 18–1–105(9.7)(b)(XII); 16–11–309(2)(a)(I)(A), (B), (II)(C), (4) & (5); *Terry II*, 977 P.2d at 147–50; *Terry I*, 791 P.2d at 378.

### III.

Accordingly, we affirm the judgment of the court of appeals, which shall remand this case to the trial court for resentencing for a crime of violence, without extraordinary risk sentencing, consistent with this opinion.

---

**10.** In order for extraordinary risk sentencing to apply, the prosecution need not separately plead and prove serious bodily injury or death, or use, or possession and threatened use, of a deadly weapon, if the prosecution has pleaded and proved the element as part of the underlying per se crime of violence offense. *See, e.g.,* § 18–3–203(1)(g) (second degree assault when, "[w]ith intent to cause bodily injury to another person, he causes serious bodily injury to that person or another"); *People v. Lee*, 989 P.2d 777, 782–83 (Colo.App.1999).